IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

KEVIN R. MCCARTHY, *Trustee,*  )
                               )
    Plaintiff,                 )
                               )
    v.                         )    Case No. 1:13-cv-01559-GBL-TCB
                               )
CARLOS INOCENTE GIRON, *et al.,*  )
                               )
    Defendants.                )

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Carlos I. Giron and Carlos A. Giron's Objection to United States Bankruptcy Judge Robert G. Mayer's Report and Recommendation regarding the Court's judgment that Carlos I. Giron and Carlos A. Giron are personally liable for their company C&C General Builders, Inc.'s ("C&C") debt and to disregard the Corporation's limited liability. This adversary proceeding arises out of Debtor C&C's Chapter 7 bankruptcy. Under Count I of the Complaint, Trustee seeks to avoid allegedly fraudulent transfers from C&C to other entities and under Count II, seeks to pierce the corporate veil to hold Defendants personally liable for the debts of C&C. The Report and Recommendation recommends that the District Court enter judgment against Carlos I. Giron and Carlos A. Giron on Count I in the amount of $114,925.10 and on Count II in the amount of $177,062.33.

There are essentially four issues before the Court. The first issue is whether the Court should adopt the various findings of fact of the Bankruptcy Court on matters such as contracting with a corporation, percent ownership of the corporations, production of documents, and arbitration fees. The Court adopts the Bankruptcy Court's findings of fact and overrules

Defendants' objections because each of Defendants' objections is either directly rebutted by the evidence before the Court, or where there was no evidence in the record to support Defendants' objection, Defendants have not offered any additional documentation for the Court to consider.

The second issue is whether the Court should adopt the Bankruptcy Court's application of Virginia choice of law rules. The Court adopts the Bankruptcy Court's choice of Virginia substantive law because absent a compelling federal interest that dictates otherwise, a bankruptcy court is to apply the forum state's choice of law principles for claims that are the subject of state law, such as fraudulent conveyance and piercing the corporate veil. Because the forum state is Virginia, Virginia choice of law principles should apply. Virginia choice of law principles require the application of the substantive law of the place of the wrong for fraudulent conveyance, a principle known as *lex loci delicti*, making Virginia substantive law the appropriate law for fraudulent conveyance. Virginia's choice of law principles dictate that the law of the state of incorporation determines whether a corporate veil may be pierced, again making Virginia substantive law the appropriate law to apply because C&C was incorporated in Virginia.

The third issue is whether the Court should adopt the Bankruptcy Court's recommendation to avoid $114,925.10 in allegedly fraudulent conveyances made by C&C after March 22, 2007 (the date the contract was executed with Creditors). The Court adopts the Bankruptcy Court's recommendation regarding fraudulent conveyance because Trustee made a prima facie case based on the presence of certain badges of fraud, which Defendants failed to rebut.

The final issue is whether the Court should adopt the Bankruptcy Court's recommendation to pierce the corporate veil of C&C and hold Carlos I. Giron and Carlos A.

2

Giron personally liable for C&C's debts. The Court adopts the Bankruptcy Court's recommendation on piercing the corporate veil because Defendants failed to observe corporate formalities and used Debtor for improper purposes such that they should not be protected by the limited liability shield afforded by the corporate form.

## I.    BACKGROUND

Defendants in the present adversarial suit are Carlos I. Giron and Carlos A. Giron, father and son, who worked together as general contractors. Their company, C&C Contractors, Inc. was incorporated in Virginia in 1997, though the name was later changed to C&C General Builders, Inc. in 2005. (Doc. 2 at 11.) C&C is the Debtor in an underlying Chapter 7 bankruptcy proceeding, in which the Bankruptcy Court appointed Kevin R. McCarthy as Trustee. Subsequently, Trustee filed a complaint in an adversary proceeding against Carlos I. Giron ("Carlos Giron") and Carlos A. Giron ("Alex Giron"). John and Teresa Dodds ("Creditors") are the Debtors' sole creditors; though they are not a party to the adversary proceeding.

Debtor held a general contractor's license until August 2009. (Doc. 2, at 11.) Debtor worked on small projects in the Washington, DC area until it entered into a contract with Creditors on March 22, 2007 to renovate 1712 14th Street Northwest, Washington, DC 20009. (Doc. 2, at 13.) The contract was for $973,400, and required Creditors to make weekly progress payments of about $34,000 for twenty-three weeks, the duration of the project. (Doc. 9-3, at 10; Doc. 2, at 13.)

Creditors made regular payments through May 8, 2008, totaling $652,447.50, which amounted to about sixty-seven percent of the total contract. (Doc. 2, at 13.) Creditors began to question if the work completed was comparable to the percent of the contract they had paid up to that point. (Doc. 9-5, at 3.) Creditors engaged a construction consultant to evaluate the progress

3

of the project, who ultimately found that only thirty-nine percent of the project had been completed. (Doc. 9-4, at 31.) Creditors refused to continue payments until the quantity of work equaled the payments already made. Debtor disagreed with the conclusion of the consultant, and refused to continue work, though the exact reason for discontinuing work is disputed. (Doc. 2, at 13.)

In 2008, Creditors sued C&C in the Superior Court of the District of Columbia and the matter was referred to arbitration. (Doc. 9, at 12.) On July 27, 2009, the arbitrator awarded Creditors damages of $120,872.42. (Doc. 2 at 13.) On July 31, 2009, when Creditors attempted to collect from Debtor, Debtor's attorney informed Creditors that Debtor had no assets. (Doc. 2, at 13.) Shortly thereafter, Defendants created a new company called C&A General Builders, though it is disputed whether C&A was wholly owned by Alex Giron or by both Girons. (Doc. 2, at 14.) On October 16, 2009, the Superior Court of the District of Columbia confirmed the arbitration award. (Doc. 9, at 19.)

On February 10, 2012, Debtor filed its Chapter 7 bankruptcy petition, at which time the Bankruptcy Court appointed Trustee. Trustee subsequently filed a complaint against Defendants with two counts: Count I for fraudulent conveyance, and Count II to pierce the corporate veil and hold the Girons personally liable. (Doc. 9, at 10.) On September 19, 2013, the Bankruptcy Court conducted a trial in the adversary proceeding ("Bankruptcy trial"). (Doc. 2, at 10.) John Dodds, Creditor, and Robert Lemay, tax accountant for Debtor, testified. (Doc. 9-5, at 38–39, 136.) Neither Carlos nor Alex Giron testified on their own behalf to explain or rebut any of the evidence against them. The Trustee offered portions of Defendants' depositions into evidence to use against them.

Trustee alleged that from 2007 through 2009 Defendants used the money in the C&C corporate bank account to pay personal expenses, including the mortgages on their homes, car payments, and even gym memberships, totaling $157,047.30. (Doc. 2, at 14–15.) Trustee offered bank statements from Wachovia, Debtor's bank, and offered portions of the deposition testimony of Alex Giron confirming that Defendants used the corporate bank account to make personal payments. (Doc. 9, at 129.) The Trustee presented evidence that Alex Giron admitted that Debtor had no work other than Creditors' project, and no assets aside from the Creditors' progress payments. (Doc. 9, at 134–35.) Trustee alleged that the Debtor's assets were dissipated by Defendants' use of corporate funds for the Giron's personal debts.

Defendants' attorney attempted to explain Debtor's payments to Defendants' as payments for services reflected in 1099s forms (Doc. 9-5). However, Defendants did not present evidence in the record that these forms were actually filed. When Debtor's tax accountant, Robert Lemay, testified in the Bankruptcy trial, he explained that regardless of whether the 1099s were or were not filed, 1099s were inappropriate forms for Defendants to use because Defendants were not independent contractors. (Doc. 9-5, at 188.) Mr. Lemay testified that Defendants should have filed W-2s instead. Alex Giron confirmed in his deposition that C&C never filed any W-2s for either his father or himself. (Doc. 9, at 126.)

Regarding the piercing the corporate veil claim, the Trustee put forth evidence that Defendants failed to observe any corporate formalities and in support, pointed to the fact that no corporate meetings were ever held with stockholders or directors, there were no corporate books, and the corporation was not adequately capitalized. (Doc. 2, at 15–16.) Defendants did not dispute Trustee's evidence. Trustee also put forth evidence that Defendants deposited and withdrew personal money from the corporate bank account without explanation. (Doc. 2, at 24.)

Because Defendants did not consent to the Bankruptcy Court entering final judgment, on November 18, 2013, the Bankruptcy Court issued a Report and Recommendation proposing judgment in favor of Trustee and against Defendants on Counts I and II in the amount of $114,925.10, and $177,062.33, respectively. (Doc. 2.) On Count I, the Bankruptcy Court recommended:

> In light of the gross disparity between the value of the work performed and the payments made; the payments made for the benefit of the Girons; the significant cash withdrawals; and the absence of any explanation of the payments, the payments of $157,047.30[1] are avoidable under Va. Code (1950) §55-80 as incorporated by 11 U.S.C. §544(a).[2]

(Doc. 2, at 20.) On Count II, the Bankruptcy Court recommended, "The corporate veil should be pierced and Carlos Innocente [sic] Giron and Carlos Alexander Giron should be personally liable for the debts of C&C General Builders, Inc.," in the amount of $177,062.33. (Doc. 2, at 24.)

On December 2, 2013, Defendants filed a Motion to Reconsider (Doc. 2, at 26), to which Trustee filed an Opposition on December 3, 2013 (Doc. 2, at 37). On December 6, 2013, the Bankruptcy Court denied Defendants' Motion because the arguments put forth by Defendants should have been filed as an objection to the Report and Recommendation in district court. (Doc. 2, at 44.) Defendants then filed an Objection on December 6, 2013. (Doc. 2-1.) Defendants made many objections to the Bankruptcy Court's proposed findings of fact and proposed recommendation, however, they do not object to paragraphs one, three to five, seven to seventeen, twenty-two to twenty-three, thirty-eight to thirty-nine, forty-one, and forty-three to

---

[1] The amount of $157,047.30 represents the total amount of all of the conveyances Trustee has asked the Bankruptcy Court to consider. The Bankruptcy Court's recommendation for Count I is $114,925.10, which represents conveyances made by C&C after the execution of the contract with the Dodds (March 22, 2007).

[2] Though the Bankruptcy Court references 11 U.S.C. § 544(a) in paragraph fifty-six, this appears to be a typographical error, which should be § 544(b), the relevant section of the code, and what the Bankruptcy Court refers to in the section heading on fraudulent conveyances as well as in paragraph forty-eight.

forty-seven. Trustee responded to Defendants' Objection on December 13, 2013. (Doc. 2-2.) Defendants did not file a copy of the transcript from the Bankruptcy trial with this Court, nor did they provide any exhibits in support of their objections. Additionally, the vast majority of Defendants objections are not accompanied by any citations to the bankruptcy record. (*See* Doc. 2-1.)

On February 20, 2014, the Court set the matter for hearing on March 21, 2014 and sent notifications to counsel for both parties. At the hearing on March 21, 2014, only counsel for Trustee appeared. Neither the local counsel, nor the pro hac vice counsel for Defendants appeared. Oral argument on the objections was finally heard on April 1, 2014. (Doc. 7.) Neither Carlos Giron nor Alex Giron testified in the District Court hearing on April 1, 2014.

## II. DISCUSSION

### A. Standard of Review

Under Rule 9033 of the Federal Rules of Bankruptcy Procedure, where a bankruptcy court files proposed findings of fact and conclusions of law, if either of the parties objects to the bankruptcy judge's findings of facts or conclusions of law, the district judge will make a de novo review of the objections based on the record. Fed. R. Bankr. P. 9033(d). "The district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions." *Id.*

### B. Analysis

The Court overrules Defendants' objections and adopts the Report and Recommendation in full. The Court adopts the Bankruptcy Court's proposed findings of fact because each of Defendants' objections is either directly rebutted by the evidence before the Court, or Defendants have not provided any documentation to support their objections. The Court adopts the

Bankruptcy Court's choice of Virginia substantive law because a bankruptcy court is to apply the forum state's choice of law principles for claims that are the subject of state law, such as fraudulent conveyance and piercing the corporate veil. Virginia's choice of law rules for both of these claims require the application of Virginia substantive law.

The Court adopts the Bankruptcy Court's subsequent analysis and recommendation regarding fraudulent conveyance because Trustee made a prima facie case based on badges of fraud, which Defendants failed to rebut. The Court also adopts the Bankruptcy Court's analysis and recommendation on piercing the corporate veil because Defendants failed to observe corporate formalities and used Debtor for improper purposes such that they should not be protected by the limited liability shield afforded by the corporate form.

### i.    Defendants' Non-Compliance with the Federal Rules of Bankruptcy Procedure

As a preliminary issue, the Court notes that Defendants, who object to the Bankruptcy Court's Report and Recommendation, have failed to comply with Federal Rule of Bankruptcy Procedure 9033(b) in two major ways. Rule 9033(b) reads:

> Within 14 days after being served with a copy of the proposed findings of fact and conclusions of law a party may serve and file with the clerk written objections which identify the specific proposed findings or conclusions objected to and state the grounds for such objection. A party may respond to another party's objections within 14 days after being served with a copy thereof. A party objecting to the bankruptcy judge's proposed findings or conclusions shall arrange promptly for the transcription of the record, or such portions of it as all parties may agree upon or the bankruptcy judge deems sufficient, unless the district judge otherwise directs.

Fed. R. Bankr. P. 9033(b).

First, Defendants had fourteen days to file their objections to the Bankruptcy Court's proposed findings of fact and conclusions of law. Under Rule 9033(c) a party may make a formal request for an extension of time to file objections before the time for filing objections has expired.

In this case, the Report and Recommendation was issued on November 18, 2013, and the Objection was not filed until December 6, 2013—eighteen days after the issuance of the Report and Recommendation. Defendants never requested an extension and therefore the objections are untimely.[3] Nonetheless, the Court uses its discretion to review Defendants' objections despite the untimely filing.

Second, Defendants were required to *promptly arrange* for the transcription of the record for submission to the District Court. Defendants never provided a transcript of the Bankruptcy trial to the District Court despite the fact that their objections were filed four months prior to the District Court hearing. During the status conference held on March 25, 2014, counsel for Defendants admitted that she had not ordered the transcript, despite the fact that the Bankruptcy Court has had a copy of the transcript since November 8, 2013. (Doc. 9-5, at 3.) Furthermore, the transcript in the bankruptcy record has been unrestricted since February 6, 2014. (*Id.*) As Defendants failed to file any transcript, exhibits, or other supporting documentation, the Court, of its own accord, had to request to have the entire bankruptcy record filed in its docket. Therefore, the Court finds that Defendants have not provided any sort of satisfactory explanation for their non-compliance with Rule 9033(b)'s specific mandate.

**ii.    The Court adopts the Bankruptcy Court's Proposed Findings of Fact**

*a. Paragraph Two: Jurisdiction over Count II*

The Court adopts the Bankruptcy Court's statements in paragraph two regarding the submission of proposed findings of fact and conclusions of law for Count II, and overrules

---

[3] The Fourth Circuit has held that under Rule 9033(b), if a party fails to file written objections within the time period required by 9033(b), the party is deprived of its right to appeal from a district court's holding on the proposed findings of fact and conclusions of law. *In re Nantahala Village, Inc.*, 976 F.2d 876 (4th Cir. 1992).

Defendants objection. Defendants argue in their objection that Count II, piercing the corporate veil, is not a core proceeding because it arises under state law, and therefore the jurisdiction of the Bankruptcy Court does not extend to Count II unless the parties consent. (*See* Doc. 2, at 47.)

This is an issue that was explicitly considered by the Bankruptcy Court. On July 10, 2013, the Bankruptcy Court ordered the parties to file briefs regarding whether the Bankruptcy Court had jurisdiction to hear the claims. (Doc. 9, at 3.) Trustee filed a brief opposing dismissal, Defendants filed a brief in favor of dismissal, and Trustee filed a reply brief. The Bankruptcy Court heard oral argument on the issue on September 10, 2013 and denied the motion to dismiss for lack of jurisdiction. (*Id.* at 5.) At no time did Defendants file a motion for withdrawal of reference.

First, the Court notes that Defendants do not cite any case law in their objection currently pending before this Court to support their claim that the piercing the corporate veil claim is a non-core proceeding. Second, 28 U.S.C. § 157(b)(3) explicitly states that "a determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by state law."

The Court recognizes that there is a split of opinion in federal courts around the country regarding whether a claim for piercing a corporate veil is a core proceeding. *Compare Cent. Vt. Pub. Serv. Corp. v. Herbert*, 341 F.3d 186, 192 (2d Cir.2003) ("As long as state law permits alter ego tort claims or similar actions, such actions are core proceedings because they 'relate[ ] to the property of the estate,' and 'bring [ ] property into the estate of the debtor,' particularly as a proceeding to 'recover fraudulent conveyances' under 28 U.S.C. 157(b)(2)(H)."); *with Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228 (3d Cir. 1994) ("Yet actions by a creditor to pierce the corporate veil, or alter ego actions against the debtor corporation, are often considered non-core,

'related to' proceedings.") Despite this split of opinion, the courts in the Eastern District of Virginia that have addressed this issue, for the most part, have found it to be a core proceeding. *See In re SunSport, Inc.*, 260 B.R. 88 (Bankr. E.D. Va. 2000) (corporate alter ego, veil piercing, successor liability, and fraudulent transfer case was core proceeding); *In re Richels*, 163 B.R. 760 (Bankr. E.D. Va. 1994) (piercing corporate veil and fraudulent conveyance claims were a core proceeding); *In re Landbank Equity Corp.*, 83 B.R. 362 (Bankr. E.D. Va. 1987) (piercing the corporate veil claim is a core proceeding). The only case that the Court was able to find from this jurisdiction that finds a corporate veil piercing claim to be a non-core proceeding is distinguishable from the present case. *In re Systems Eng'g & Energy Mgm't Assoc., Inc.*, 252 B.R. 635, 649–50 (Bankr. E.D. Va. 2000). Specifically, the *In re Systems Engineering* court first acknowledged that courts across the country are split on the issue of whether corporate veil piercing is a core proceeding. Second, the court ruled that because the case before it was unique in that the trustee was seeking to hold the shareholders of the alleged alter ego corporations liable [essentially making it two levels removed from the bankruptcy proceeding] it did not need to "resolve these varied views of the extent of a bankruptcy court's jurisdiction over an alter ego action in order to conclude that the instant theory of recovery is not a core proceeding" because the claim was not asserted against the alleged alter ego corporation. *Id.*

Regardless of whether or not Defendants have put forth sufficient authority to establish that the Bankruptcy Court erred in determining that piercing the corporate veil was a core proceeding, Defendants' objection is immaterial because the Bankruptcy Court only entered a report and recommendation and did not enter a final order or judgment. Under Rule 9033(a), a bankruptcy judge can hear non-core proceedings pursuant to 28 U.S.C. § 157(c)(1), and can file proposed findings of fact and conclusions of law. That is precisely what the Bankruptcy Court

did in this case. Defendants seem to misunderstand the status of the proceeding when they object to the jurisdiction of the Bankruptcy Court to enter final judgment; the Bankruptcy Court has not attempted to enter a final judgment, but has submitted its Report and Recommendation to this Court, in accordance with *McCarthy v. Wells Fargo Bank, N.A. (In re El-Atari)*, No. 1:11-cv-1090, 2011 WL 5828013 (E.D. Va. Nov 18, 2011) and Rule 9033. Therefore, the District Court adopts the Bankruptcy's Court's statements in paragraph two regarding jurisdiction to submit proposed findings of fact and conclusions of law.

### b. *Paragraph Six: Ownership of C&C*

The Court adopts the Bankruptcy Court's finding that Defendants are each fifty-percent owners of C&C and overrules Defendants' objection. According to the Bankruptcy Court, the deposition transcripts of both Girons stated that they were co-owners of C&C. Additionally, the Statement of Affairs that C&C filed as part of its Chapter 7 voluntary petition for bankruptcy lists both Carlos and Alex Giron as fifty-percent owners. The Court chooses not to credit Defendants' seven years of *unsigned* tax returns given the weight of evidence from Defendants themselves indicating that they were fifty-percent owners. Defendants have not provided any documentation to this Court to support their more recent bare assertion regarding ownership. Additionally, neither Defendant testified during the Bankruptcy trial nor the District Court hearing to rebut the claim that C&C was jointly owned by father and son. Therefore, the Court overrules Defendants' objection regarding their percentage of ownership of C&C.

### c. *Paragraphs Eighteen and Thirty-Seven: Contracting with a Corporation*

The Court adopts the Bankruptcy Court's finding and overrules Defendants' objection to paragraphs eighteen and thirty-seven that the original contract between Debtor and Creditors failed to indicate that Debtor was incorporated, and thus found that Creditors were not aware that

Debtor was a corporation when the parties executed the contract. The contract does not indicate that Debtor is a corporation. (Doc. 9-3 at 5.) Defendants cite the arbitration order dated July 27, 2009, as support for their objection because the arbitrator held that there was no evidence adduced during the arbitration hearing to indicate that Creditors believed that either Carlos Giron or Alex Giron were individually the contracting parties. (Doc. 9 at 17.) Neither this Court nor the Bankruptcy Court knows what evidence was before the arbitrator when it made this determination. However, it is undisputed that the contract itself does not indicate that Debtor was incorporated so the Court overrules the objection.

d. *Paragraph Nineteen: Payments and Percent of Work Completed*

The Court adopts the Bankruptcy Court's finding in paragraph nineteen regarding Creditors' payments to Defendants, and the percentage of work that had been paid for versus completed, and overrules Defendants' objection because the objection is not responsive to the substance of paragraph nineteen. Defendants' objections reads: "In the arbitration order dated July 27, 2009, the arbitrator held that the order was based on 'testimony from both parties' (i.e. not just the Dodds)." The objection appears to refer to a conflict over what the arbitrator based the arbitration order on, however paragraph nineteen of the Report and Recommendation makes no mention of arbitration, and refers only to contract payments, price, and percentage of work completed. The Court overrules the objection.

e. *Paragraph Twenty: Work Stoppage at Construction Site*

The Court adopts the finding in paragraph twenty that Debtor refused to continue working on the construction project without additional progress payments and walked off the job site when payments were not forthcoming. The Court overrules Defendants' objection because there is no evidence in the record before this Court to support Defendants' claim that it is not true

that Debtor refused to continue work without additional progress payments. Defendants do not dispute that work was stopped; they object only to the rationale the Bankruptcy Court gave. They state in their objection the reason they walked off was because Creditors refused to enter a change order to reflect that the project was actually five-stories instead of four. It is undisputed that the project became five-stories, a point conceded by Creditors in John Dodds' testimony. (Doc. 9-5 at 81.) However, the evidence cited by Defendants in support of their explanation for ceasing work was presented in arbitration and is not in the record before this Court so it cannot be considered. Thus, the Court overrules the objection.

   f. *Paragraph Twenty-One: Arbitration Fees awarded to the Dodds in the Amount of $1,250.00*

  The Court adopts the finding in paragraph twenty-one that Debtor was ordered by the arbitrator to pay $1,250.00 in arbitration fees and costs to Creditors and overrules Defendants' objection because the finding is supported by the arbitration award. The arbitration award states that "the compensation and expenses of the arbitrator . . . shall be borne equally," by C&C and the Dodds, and "[t]herefore, C&C General Builders shall reimburse John and Teresa Dodds the additional sum of $1250.00, representing that portion of said fees and expenses in excess of the apportioned cost previously incurred by John and Teresa Dodds." (Doc. 9, at 118.) It might have been more precise for paragraph twenty-one to include the detail that arbitration fees and costs were to be borne equally between the parties and that the $1,250.00 was to reimburse Creditors for fees and expenses paid in excess of the apportioned costs. However, it was accurate for the Bankruptcy Court to state that Debtor was ordered to pay $1,250.00 to Creditors. Therefore, the Court overrules Defendants' objection.

g. *Paragraph Twenty-Four: Formation of C&A General Builders*

The Court adopts the finding in paragraph twenty-four that after the arbitrator found in favor of Creditors, and against Debtor, "the Girons" jointly formed a new company, C&A General Builders. Defendants object to the finding that C&A was formed by "the Girons" collectively, and argue that it was formed solely by Alex Giron. The Bankruptcy Court relied on the deposition transcript of Carlos I. Giron, which was a trial exhibit but is not part of the record, and was not provided to this Court by Defendants. Neither Carlos Giron nor Alex Giron testified during the Bankruptcy trial nor in the District Court hearing to rebut the claim that C&A was formed by both father and son, nor did they submit any documentation to this Court showing Alex Giron's sole ownership interest. The only evidence provided to the Bankruptcy Court was unsigned tax returns to which the Court gives little weight. The Court overrules the objection because there is nothing in the record before it that supports Defendants' bare assertion.

h. *Paragraphs Twenty-Five through Thirty-Six: Personal Payments made from the Corporate Account*

The Court adopts the findings in paragraphs twenty-five through thirty-six that list payments made out of the corporate bank account for Defendants' personal expenses. Defendants do not dispute the accuracy of this finding; rather, Defendants argue that it is misleading for the Bankruptcy Court not to explain that these payments were recaptured in 1099s. The Court adopts the findings in paragraphs twenty-five through thirty-six over Defendants' objection because there is no evidence to show that the Defendants ever filed the 1099s, so the Court gives them little weight. Additionally, according to the testimony of the accountant, Robert Lemay, a 1099 would be an inappropriate way of recapturing these payments as income, as

1099s are forms that are to be used by independent contractors, which Defendants are not. (Doc. 9-5, at 187–88.) Defendants do not point to anything else in the record to support their objection, thus the Court overrules Defendants' objection.

     i. *Paragraph Forty: Defendants to Appear as Designated Corporate Representatives of Debtor and Produce Documents*

The Court adopts the finding in paragraph forty that on September 14, 2012, the Bankruptcy Court entered an Order for Oral Examination under Rule 2004 which directed Defendants to appear as designated corporate representatives of the Debtor, for oral examination and to produce documents because it is a fact that the Bankruptcy Court entered the Order. The Order explicitly states that both Carlos I. and Carlos A. Giron are corporate representatives of C&C. (Doc. 9-2 at 6.) Thus the Court overrules Defendants' objection.

     j. *Paragraph Forty-Two: Document Production in Response to September 14, 2012 Order*

The Court adopts the finding that no documents were produced in response to the September 14, 2012 Order and overrules Defendants' objection because there is nothing in the record to indicate otherwise, and the Defendants offer no proof in support of their bare assertion that Debtor submitted documents multiple times. The Order requested production of:

- All bank statements, check ledgers, and cancelled checks for all accounts maintained by Debtor from March 2007;

- All articles of incorporation, bylaws, amendments, resolutions, minutes of meetings of board of directors or officers, or other corporate documents relating to Debtor from the date of inception;

- All documents and records that show the amount of funds paid to Carlos and Alex Giron, or to a third party for their benefit by Debtor from January 1, 2007;

- All financial statements or documents submitted to a bank or lender for Debtor; all documents and financial statements that set forth the profit and loss of Debtor; and

- All signed and filed corporate federal and state tax returns for Debtor since 2006; and all W-2s and 1099s issued for funds paid to or for the benefit of Carlos and Alex Giron since January 1, 2007.

(Doc. 9-2, at 6–7.) After months of requests, during which Defendants continually claimed they did not have any documents, Defendants finally provided Trustee with checks and bank statements—only after Trustee had already subpoenaed all of the bank records at his own expense. (Doc. 9-2, at 16.) Additionally, as Defendants failed to produce tax documents responsive to the court order in the timeframe required by the order, Trustee had to subpoena Debtor's tax accountant in order to receive tax statements. (*Id.*) The parties seem to agree that C&C's articles of incorporation were produced eventually, though not in time for the 2004 proceeding, and they do not appear in the record before this Court. Defendants' objection does not cite to anything specific in the record that would demonstrate they produced records responsive to the September 14, 2012 Order. Therefore, the Court adopts the finding of the Bankruptcy Court and overrules Defendants' objection.

### iii.   The Court adopts the Bankruptcy Court's Proposed Conclusions of Law

#### a. *Application of Virginia Choice of Law Rules*

The Court adopts the Bankruptcy Court's conclusion of law applying Virginia choice of law rules to Counts I and II, and overrules Defendants' objections in paragraphs forty-eight through fifty-four and fifty-seven through seventy. Absent compelling federal interest that

dictates otherwise, a bankruptcy court is to apply the forum state's choice of law principles for claims that are the subject of state law, such as fraudulent conveyance and piercing the corporate veil. *In re Merritt Dredging Co.*, 839 F.2d 203, 205–06 (4th Cir. 1988). Because the forum state is Virginia, Virginia choice of law principles should apply.

### i. Principle of lex loci delicti *Pertains to Fraudulent Conveyance*

Under Virginia choice of law principles, for the tort of fraudulent conveyance courts apply the substantive law of the place of the wrong, a principle known as *lex loci delicti*. *Terry v. June*, 420 F. Supp. 2d 493, 503 (W.D. Va. 2006). The place of the wrong for choice of law purposes is the place where the last event necessary to make an actor liable for an alleged tort takes place. *Id.* (quoting *Quillen v. Int'l Playtex Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986)).

In the present case, all significant transactions occurred in Virginia. Defendants reside in Virginia (Doc. 2, at 12), and used the corporate funds to pay for mortgages on their Virginia residences, among other personal expenses to support their lives in the state. (*Id.*) It is undisputed that Debtor was incorporated in Virginia (Doc. 2, at 11), and that Defendants' office was located in Virginia (Doc. 2, at 12). In the hearing before this Court, Defendants conceded that Virginia substantive law applied to the fraudulent conveyance claim. Therefore, the Court applies the substantive law of Virginia to the fraudulent conveyance claim.

### ii. State of Incorporation Determines Piercing Corporate Veil Claim

The Court adopts the Bankruptcy Court's application of Virginia law to Count II, piercing the corporate veil, and overrules Defendants' objection to paragraphs fifty-seven through seventy. Virginia's choice of law principles dictate that the law of the state of incorporation determines whether a corporate veil may be pierced. *Guest Service Co. v. Della Ratta*, No. 101281, 1991 WL 835131, at *4 (Va. Cir. Aug. 14, 1991) (citing *Morrow v. Vaughn-*

*Bassett Furniture Co.*, 173 Va. 417, 422 (1939); *Mountain Lake Co. v. Blair*, 109 Va. 147, 154 (1909)). It is undisputed that Debtor was incorporated in Virginia. (Doc. 2, at 12.) Accordingly, Virginia substantive law applies to Count II, piercing the corporate veil, which is consistent with the finding of the Bankruptcy Court. Therefore, the Court overrules Defendants' objection to paragraphs fifty-seven through seventy.

### b. *Application of Substantive Virginia Law to Trustee's Claims*

#### i. *Fraudulent Conveyance*

The Court adopts the Bankruptcy Court's conclusion of law in paragraph fifty-five that Trustee has made a prima facie case of fraudulent conveyance, and overrules Defendants' objection in which they claim to have explained the propriety of those transactions.

The Trustee sought to avoid the allegedly fraudulent transfers under both 11 U.S.C. § 548(a) and 11 U.S.C. § 544(b). The Bankruptcy Court, however, found that Section 548(a) does not apply because there were no transfers within the statutory period. As such, the Bankruptcy Court analyzed the fraudulent conveyance claim under Section 544(b) only. Section 544(b)(1) states:

> Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

Virginia Code § 55-80 provides the authority to void fraudulent conveyances:

> Every gift, conveyance, assignment or transfer of, or charge upon, any estate, real or personal, every suit commenced or decree, judgment or execution suffered or obtained and every bond or other writing given with intent to delay, hinder or defraud creditors, purchasers or other persons of or from what they are or may be lawfully entitled to shall, as to such creditors, purchasers or other persons, their representatives or assigns, be void. This section shall not affect the title of a purchaser for valuable consideration, unless it appear that he had notice of the

fraudulent intent of his immediate grantor or of the fraud rendering void the title
of such grantor.

Under Virginia law, certain facts and circumstances have become badges of fraud, or
presumptions of fraud that establish a prima facie case of fraudulent conveyance. *Fox Rest
Assoc., L.P. v. Little*, 717 S.E.2d 126, 131 (Va. 2011). A court will look to the evidence for
badges of fraud, which, if established, would create a prima facie case that must be rebutted by
defendants. *Hutcheson v. Savings Bank of Richmond*, 105 S.E. 677, 681 (Va. 1921). The
Bankruptcy Court noted a number of badges of fraud present in this case, including: threat of
litigation by its creditors; insolvency at the time of transfer; lack of or gross inadequacy of
consideration for the conveyance; and close relationship between the parties. *In re Porter*, 37
B.R. 56, 63 (Bankr. E.D. Va. 1984) (summarizing badges of fraud). Applying these badges of
fraud to the facts presented in this case, the Bankruptcy Court found a prima facie case had been
established.

The Court credits Trustee's allegation that Debtor became insolvent as a result of the
transfers made by the Girons. Additionally, the burden was on the Girons to show that the
payments made to them or on their behalf were both intended to be salary and reasonable.
Because Defendants failed to produce any evidence or credible explanations justifying the
expenditures, the Bankruptcy Court found the payments to be greater than reasonable. The facts
that support the elements of a prima facie case of fraudulent transfer were unrebutted, aside from
the bare assertions Defendants made in their objection. Defendants claim the 1099s serve as an
explanation for the payments because the forms show the payments were income, however, this
explanation is unpersuasive to the Court since there is no evidence that the unsigned corporate
tax forms were ever filed. Defendants' did not present any Debtor 1099 forms. Furthermore,

neither Defendant testified to explain the propriety of these transactions during the Bankruptcy trial or before this Court. Additionally, the close relationship of the parties, while not a determining factor of fraud in itself, strengthens the presumption of impropriety arising from the other circumstances discussed. *Johnson v. Lucas*, 48 S.E. 497, 498 (Va. 1904). Debtor was wholly owned by the Girons and they exercised complete and ultimate authority over the expenditures of the corporation.

During the April 1, 2014 hearing, counsel for Defendants presented a new argument not previously raised in Defendants' written objections that under § 55-80 conveyances made from Debtor's bank account by Defendants should not be voidable prior to July 27, 2009, the date on which the arbitration award was found in favor of Creditors. In support, Defendants urged the Court to interpret § 55-80, which refers to the "intent to delay, hinder, or defraud creditors," to mean that there must be "someone specific" to delay, hinder, or defraud. As such, Defendants contend that until judgment was found in their favor, the Dodds were not creditors in the meaning of the statute, and therefore any conveyances made before they became creditors do not fall within the meaning of the statute. During oral argument, counsel for Defendants admitted that she had not come across any case law to support her position.

First, the Court notes that under Rule 9033(a), the District Court is only required to review de novo parties' written objections to the Bankruptcy Court's Report and Recommendation. Additionally, even if Defendants had raised this issue in the written objection, courts have held that parties may not raise entirely new arguments for the first time in their objections where they were not raised before the previous court. *See e.g. In re Mirapex Prods. Liab. Litig.*, 2011 WL 2971188, at *1 (D. Minn. July 22, 2011) ("[E]ven when a magistrate judge is hearing a matter pursuant to his or her limited authority to make a 'recommended disposition,'

'a claimant must present all his claims squarely to the magistrate judge that is, the first adversarial forum, to preserve them for review.'") The Court has been unable to find any previous argument made by Defendants before the Bankruptcy Court that the conveyances should not be voided because the Dodds were not creditors under Virginia law prior to the arbitration award. As such, Defendants have procedurally defaulted this new argument.

Even if the Court were to fully consider Defendants' new argument, the argument would fail because the Supreme Court of Virginia has consistently held that in interpreting §55-80, "obtaining a judgment against a party is not a prerequisite to establishing creditor status." *Luria v. Bd. of Dirs. of Westbriar Condo. Ass'n*, 672 S.E.2d 837, 840 (Va. 2009); *see also Buchanan v. Buchanan*, 585 S.E.2d 533, 535 (Va. 2003); *Bruce v. Dean*, 140 S.E. 277, 280 (Va. 1927). In *Luria*, the Supreme Court of Virginia held that the proper inquiry in determining creditor status is "whether there was actual notice of a specific potential claim." 672 S.E.2d at 840.

The Court finds that Dodds had creditor status under § 55-80 during the time period in question because Defendants had actual notice of the potential claim. First, there can be no doubt that Defendants had notice of the potential claim in the fall of 2008 when Creditors filed suit against C&C in the Superior Court of the District of Columbia. Second, Defendants had notice of the potential claim even earlier, in May of 2008, once they refused to continue working on the Dodds' construction project despite having been paid $652,447.50, which amounted to about sixty-seven percent of the total contract, even though Defendants had only completed thirty-nine percent of the project. The reality of Defendants' situation is that from the beginning of the project in early 2007, the Dodds' progress payments exceeded the value of work Defendants performed, and yet Defendants spent the progress payments on personal expenses without

performing the work required under the contract, thus creating a liability for the incomplete work, and putting them on notice of a potential claim by the Dodds.

Accordingly, the Court adopts the finding in paragraph fifty-six and overrules Defendants' objection. Paragraph fifty-six states:

> In light of the gross disparity between the value of the work performed by Debtor and the payments made by Creditors; Defendants' significant cash withdrawals from the corporate bank account; and the absence of any explanation for the payments, payments in the amount of $157,047.30 are avoidable under Va. Code §55-80, as incorporated by 11 U.S.C. §544(a).[4]

In their objection, Defendants merely state that "the tax returns and the tax accountant's testimony are explanations." (Doc. 2-1.) Defendants did not provide any filed tax returns to help explain the payments. The testimony by Defendants' accountant does not help explain either. In fact, the accountant repeatedly explained in his testimony that his company relies only on the information provided by its clients and any explanations for expenses are representations made by clients, and are not audited by the tax preparation company. (Doc. 9-5 at 138.) As such, representations made in the unfiled tax returns, even if prepared by an accountant, are given little weight when the Court considers if Defendants have adequately explained their expenditures.

After Trustee made a prima facie case of fraudulent conveyance, the burden shifted to Defendants to explain the propriety of the transactions, which they failed to do because they did not offer any evidence to explain the legitimacy of the transfers, and chose not to testify. *See Hutcheson*, 105 S.E. at 681 (when the evidence shows a prima facie case of fraud, the burden shifts to the upholder of the transaction to establish its fairness). Therefore, the Court adopts the Bankruptcy Court's conclusion of law in paragraph fifty-five that Trustee has made a prima facie case of fraudulent conveyance, and overrules Defendants' objection. Accordingly, the Court

---

[4] *See supra* footnote 1.

23

adopts the Bankruptcy Court's recommendation that the fraudulent conveyances made by Defendants on behalf of C&C after the execution of the contract with the Dodds are voidable.

### b. Piercing the Corporate Veil

The Court adopts the findings in paragraphs fifty-seven through seventy, and overrules Defendants' objection to piercing the corporate veil. Trustee seeks to pierce the corporate veil and impose personal liability on Defendants, Carlos and Alex Giron. Virginia courts have long recognized the proposition that the corporate veil may be pierced when a shareholder has made the corporation his alter ego, and when the shareholder used the entity as a device to disguise wrongs, obscure fraud, conceal crimes, or evade personal obligations. *RF & P Corp. v. Little*, 440 S.E.2d 908, 913 (Va. 1994).

In Virginia, courts determining whether to pierce the corporate veil look to 1) whether there is "unity of interest and ownership is such that the separate personalities of the corporation and the individual no longer exist and to adhere to that separateness would work an injustice," and 2) whether the shareholder has "used the corporation to evade a personal obligation, to perpetrate fraud or a crime, to commit an injustice, or to gain an unfair advantage." *C.F. Trust Inc. v. First Flight Ltd. P'ship*, 140 F. Supp. 2d 628, 642 (E.D. Va. 2001) (quoting *O'Hazza v. Exec. Credit Corp.*, 431 S.E.2d 318 (Va. 1993)). The Bankruptcy Court found that Defendants should be held personally liable for the debts of the corporation after applying Virginia's two-part analysis.

The Supreme Court of Virginia has identified a number of factors used in determining the first part of the piercing the corporate veil analysis, unity of interest and control between shareholders and a corporation: 1) comingling of personal and corporate funds; 2) siphoning business assets into personal pockets; 3) undercapitalization of the business; and 4) whether

business formalities were observed. *C.F. Trust Inc.*, 140 F. Supp. 2d at 648 (citing *Cheatle v. Rudd's Swimming Pool Supply Co., Inc.*, 360 S.E.2d 828 (Va. 1987); *Greenberg v. Commonwealth*, 499 S.E.2d 266 (Va. 1998); *O'Hazza*, 431 S.E.2d 318; *Lewis Trucking Corp. v. Commonwealth*, 147 S.E.2d 747 (Va. 1966)). In the case of C&C, its corporate bank account was used as Defendants' personal account, where they deposited and withdrew money, and paid personal expenses, such as mortgages, shopping, travel, gym membership, and car loans. (Doc. 9, at 130.) These transfers were made with the money paid to Debtor by Creditors, for the cost of renovating Creditors' property.   In addition to these financial improprieties, Debtor did not follow any corporate formalities. Defendants never produced meeting minutes or stock books. Alex Giron conceded in his deposition that he did not remember C&C holding any meetings and that he had never seen any sort of corporate stock book, board of directors meeting minutes, or minutes of a meeting with shareholders. (Doc. 9, at 117.) Alex Giron also conceded that C&C never set up any sort of payroll account. (Doc. 9, a 119–20.)

In addressing the second part of the piercing the corporate veil analysis, whether the owners used corporation to evade a personal obligation, to perpetrate fraud or a crime, to commit an injustice, or to gain an unfair advantage, courts look to determine if there was a legitimate business purpose for the conduct in question. *C.F. Trust Inc.*, 140 F. Supp. 2d at 643. Defendants have not put forth any explanation that might constitute a valid business purpose for the transfers Trustee seeks to void nor did they testify to explain the transfers. In the absence of a valid business reason for their conduct, the Court may conclude that Defendants were using the corporate form improperly. Because the Girons used Debtor for an improper purpose, they should not be protected by the limited liability shield that is afforded by the corporate form.

Finally, Defendants' other arguments regarding piercing the corporate veil relate to whether it would be appropriate to hold Alex Giron personally liable because Defendants claim Alex Giron had no ownership interest in C&C. The Court ruled on this argument above and rejected it. *See supra* Part II.B.ii.b.

Therefore, the Court overrules Defendants' objection to piercing the corporate veil.

## III.   CONCLUSION

The Court affirms all provisions not objected to by Defendants in paragraphs one, three to five, seven to seventeen, twenty-two to twenty-three, thirty-eight to thirty-nine, forty-one, forty-three to forty-seven, and adopts those findings as supported by the record. The Court also overrules all of Defendants' objections. Therefore, the Court adopts the Report and Recommendation in full.

**IT IS ORDERED** that **JUDGMENT** is **ENTERED** in favor of Trustee, Kevin McCarthy, and against Defendants Carlos I. Giron and Carlos A. Giron, jointly and severally, on Count I (fraudulent conveyance) in the amount of $114,925.10, and on Count II (piercing the corporate veil) in the amount of $177,062.33 (the outstanding claims against C&C). To the extent that any of the conveyances under Count I are paid back into C&C's bankruptcy estate, there will be a corresponding reduction in outstanding claims against C&C, such that there will be a corresponding reduction in the amount that can be recovered under Count II, piercing the corporate veil, from Defendants Carlos I. Giron and Carlos A. Giron.

**IT IS SO ORDERED.**

ENTERED this ___ day of June, 2014.

Alexandria, Virginia

6 / 6 / 2014

_____ /s/ _____
Gerald Bruce Lee
United States District Judge

26